Good morning. May it please the court? Good morning. My name is Phyllis Voyzinet. I started practicing bankruptcy and learning about bankruptcy in law school. It happened to be because I had a child who went to school at night and my best friend was working for a bankruptcy attorney. And there I really learned about bankruptcy, its power, how it really could turn contracts and things, as you know, kind of upside down. And so I started practicing bankruptcy law, representing debtors. I did that for about 11 years until I no longer do that anymore. And the reason is because of this case. And there's two reasons. I can no longer look at debtors and tell them, if you file bankruptcy, automatic stay is going to save your house. Don't worry. If the creditors come and ignore automatic stay, the court will impose a stay. I'll have to go and litigate. The fees will be recovered. I can't look to the debtor for fees because they have to put their money into the Chapter 13 plan. So it's a leap of faith. You rely on the statute. But in the end, as in Mr. Simpson's case, there's more debt at the end. This case comes to us from the bankruptcy appellate panel, does it not? Yes. And the bankruptcy appellate panel held that there was a violation of the stay? Correct. And that emotional distress damages are recoverable for such a violation? Yes. And that although punitive damages are also available, they weren't available on this record? Yes. And they limited your client's fees to the proportion of the claims on which there was success? The court in the trial court determined there are six causes of action. Automatic stay was one cause of action and did a formula based on the Coxing case. Now, I went through about four things there. And I found that at least the first three appear to be consistent with this court's recent opinion in Dawson. Is that right? Correct. Would Dawson require us if we were properly applying it from your point of view to send this back or can we decide it here? With respect to all issues? Yes. Okay. With respect to emotional distress. Let's just take the first three, that there was a violation, that you are entitled to emotional distress damages, but no punitive damages on this record. Could those issues be decided here without remand to either the BAP or the Bankruptcy Trial Court? I think on Dawson, on the emotional distress issues and on the attorney fees, it would need to be remanded. There should be, because I think the BAP had indicated there needed to be financial injury and Dawson indicated that, no, there's different ways of proving emotional distress injury. You can have a person come up and say this person is psychologically injured, or the judge can look at a family member's testimony, as in this case. We didn't really have a foundation for how to evaluate emotional distress damages in bankruptcy before Dawson, did we? No. And that's why I think it needs to be remanded, because there also was, after Stimson and the BAP, that standard has been used subsequently, and now Dawson just came out. So I think it does need to go back with instruction on applying Dawson. I also think that Dawson is applicable on the issue of attorney fees, because Dawson, there the Court said, although they disallowed Mr. Dallara's attorney fees also, but they said it should be based on an issue-by-issue basis. When was the bankruptcy petition first filed? I believe it was filed in 96, October 96. And when did the stay violation occur? December of 96. December 96, 1996. So almost 10 years ago. It's been a long time. Let me ask you about the attorney's fees. I am troubled by that in two respects. One, I'm troubled that the Court basically just made a mathematical calculation of this many claims, this much percentage. However, I'm also troubled that when the Court gave Stimson the opportunity to go back and do a segregation by claim, that there was like 32 hours deducted and there was no really meaningful effort to segregate out the prevailing claims from the non-prevailing claims. So in a way, the court was sort of forced with a throw-up-your-hands situation. And there is some question about why would it be an abuse when Stimson didn't really offer up the ammunition for the Court to be able to make a, you know, razor-thin determination. What's your response to that? We also don't think it was Judge Newsom's responsibility to go through and determine what attorney fees was. And this all, I think, sprouts from the fact that the fundamental argument here is attorney fees is a damage, just as any other type of damage in a trial, and yet it was kind of treated in a muddled way, both as a motion for attorney fees, like a fee application, not really a damage. You treat it like a damage in a trial. You put forth evidence, which we did. I not only provided a timesheet, but a sworn declaration. And what could have been done, as we anticipated, was further hearing. And if counsel needed to cross-examine me, why was this needed to be done on the automatic stay, why was this incurred? For example, the discovery allegations were made. We drummed up discovery. We only did three short depositions. It was the creditors, and there's three law firms on that side, that they deposed Mr. Stimson for eight days. It sounds like you've done all right against him so far. So our thought is that he – that the judge just treated it like a normal fee application rather than as an element of damages. It was a hybrid. And so I think if we went one way or the other, it would have been easier for me. For example, when I was asked to do it was before any decision was made, we didn't even have a ruling on the defenses to the violation of stay. They had 36 affirmative defenses. And I don't know, do I include fees for – you know, they made claims of bad faith both on equitable defense and also other areas that were not included in the automatic stay violation. I don't know, do I include those. So I went through it in a very detailed manner. Here's what happened. Here's the phone call. It relates to this, but it also relates to this defense. Okay. So let's say that this goes back to the Court and we remand. What happens, in your view, on the fee petition? I mean, what should happen? Probably either of two ways. We go back and they can do – present it as you would evidence, cross-examine on the attorney fee, or do it like a fee app, which would probably be the most economical, and opposing counsel can do a line item just as you would a fee app. We think this is an unreasonable cost because of this, and then the Court can look at it and make a decision. But they pretty much – they're the ones who threw their hands up and said we can't decide and here's a – here's an error. Errors happen in fee apps all the time. Attorneys don't – I mean, it's basically a sanction. You know what the Court should deduce? They know this is too much. We're deducing this line by line based on what opposing counsel presents. So in your view, it should go back – at least on the attorney's fees issues, it should go back to the bankruptcy trial court and a whole new ballgame on fees. You would present all your evidence in support, they would present all of their evidence in opposition, and the bankruptcy court would rule anew. Is that basically your position? I think because there's such an un… Can we start with a yes or no? Yes, I believe it needs to be redone because we also have a new ruling on emotional distress. We had a claim for emotional distress which got thrown out. Then we've gone through this point, so we don't know if that's compensable. And as I said, at the time I did the fee app, we didn't know if affirmative defenses are compensable. We need a – we need a measurement of what's compensable for automatic stay, what's approximate cause. Are affirmative defenses included in recovery of damages? With a directive like that, then a proper fee app could be submitted so we know what the parameters are. This is – correct me if I'm wrong – this is not a case where you were not permitted to present evidence on emotional distress initially. Is that correct? You were able to do that? Yes. Okay. This is a case where an appellate court said that you're not entitled to it. Correct. You're down to about six and a half minutes. Did you want to save any time for rebuttal? Yes, I would. Okay. Thank you. Thank you for your argument, counsel. Mr. Nyberg? Okay. All right. Are you going to split it up? I'm going to be arguing for both parties on that. Okay. I would like to reserve five minutes for rebuttal on that. You don't get to do that. Okay. There's no cross appeal, is there? There is a cross appeal. Oh, there is? Yes. Okay. On the Dawson issue? No, Your Honor. The cross appeal involves the refusal of the trial court to retroactively annul the stay. I think because of Dawson, the issue of emotional distress has been resolved for this Court on that. So the only primary issue that we have in terms of a cross appeal will be the annulment issue. Okay. Well, let's go from here and we'll see whether it's necessary to haul you back up here. Okay. Your Honor, the issue with regard to the annulment is it's an abuse of discretion. The Court did properly apply the standard under In Re National, which is a balancing of the equities. The issues that we involved, there were two issues that the Court found in terms of the side against annulment of the stay, and which we won is that the Court's found unreasonable for Byright's attorney to rely upon Stinson's attorney's representation, that Judge Gellin found that the August 96, Chapter 13 to be in bad faith, that Judge Gellin found no changed circumstances, that Judge Gellin ordered the case dismissed from the bench, and that Byright can proceed to trial on November 21, 1996. This all took place in a conversation between counsel. Mr. Cooke, as a matter of fact, not only did Mr. Cooke believe that the case was dismissed, but so did the Chapter 13 trustee, when on November 14, 1996, she wrote in her minutes, case dismissed. This all information was passed on to the debtor. The debtor was well aware of what was going on. Mr. Cooke did rely upon it and went to trial and did obtain his judgment. The judgment was served on the debtor. He admitted he received it in December of 1996. The actual order dismissing the 13 wasn't served until December 9. Mr. Cooke didn't recall seeing it, but there's no reason to believe that he didn't get it. Right? So that's the issue, and he just missed it. But what happened here, Your Honor, was the debtor remained silent, didn't do anything. He had the judgment. He remained silent for over a year, until January 5, 1998, when he sends a fax and for the first time, over a year later, says there was a stay violation. Immediately after the debtor sends this letter, he files his fourth Chapter 13 petition. Immediately after. And the sole reason why he filed that fourth Chapter 13, according to counsel here, was to deal with the judgment that was obtained. But, you know, the court considered all of those things, and it basically said, he's a bad guy for waiting. You guys are bad guys for not doing something that would be real simple to do, and that is not relying on oral representation, but going into the court file and seeing what, in fact, happened, which anyone practicing in bankruptcy would do. And sort of went like this and said, you know what, I've invoked my discretion and here's what I'm going to do. What's your best argument for why we should say his invocation of discretion was an abuse? The best argument is twofold, Your Honor. One is, and I'm not a bankruptcy attorney, I'm a civil litigator, and I just can't understand a position where a opposing counsel makes these representations to me. Because if Judge Gellin did order the case dismissed from the bench, that's a dismissal order. Other people were confused. The trustee thought it was dismissed. And I think to say that is unreasonable. You're not a bankruptcy lawyer, and I think counsel pointed out something in her opening, and that is things aren't always the same in bankruptcy court. I'm finding that out. As you know, having done some of this myself, it's counterintuitive in many respects. It's not the same as practicing commercial litigation in your normal federal district court. Here you have bankruptcy counsel who know that it's a violation to move forward without a stay. Did they do the simplest thing possible, which was to check the court record? They didn't do that. No, Your Honor. And yet in In re National, the lawyers knew the same thing. The lawyers knew, or the court found, that they knew of the bankruptcy. And yet they found that the silence of the debtor was sufficient to overcome that. We don't just have silence here. We have an affirmative representation. And that's the issue, is that you still have to be able to rely upon it. And the question is, can the lawyer be punished? Can a debtor make a misrepresentation and then sue you for saying, hey, you relied upon my false statement? And that's what he did here, because he remained silent. And then once he brings up, he brings up the Chapter 13. The statement, if a debtor counsel makes it, is false. If it's the other side doesn't check, it's an error? I think the issue is the question, what about equitable principles? Did I hear you correctly in the course of your argument say that? Yes, Your Honor. The question is the reliance here. So when debtors make a mistake, it's fraud. When lawyers for creditors make a mistake, it's a mistake. I'm not saying Mr. Smith committed fraud here. He made a representation here. I thought it was a fraudulent representation. I'm sorry. He made a misrepresentation because Mr. Smith later on said, I realize that I was wrong, that Judge Gellin didn't order it dismissed from the bench. But Mr. the point is that if you make the representation, because the problem is here that this was a debt that was not discharged. This was a collectible debt. The money would have been paid. The money is still owed. So in terms of the delay, and especially in Ray National, where they focus on the silence here is a factor of the debtor. But then you have the second to the fourth bankruptcy in which they filed a petition to vacate the judgment. The issue was now before the court, properly before the court. You didn't need to file a separate federal action. They filed a bankruptcy to deal with this issue. They filed a petition. And in that petition to vacate, they never raised a stay violation. Six months later, they then dismissed the bankruptcy. So they abandoned their claim. And then four weeks later, they filed this lawsuit. So you have to factor in the delay. So if you really look at the delay in light of the conduct of the debtor, there wasn't that much delay here. Plus the delay in everything was caused by the debtor. So you have a lot of causal effect. You have the cause of the actual stay violation itself. And then you also have the delay. You have the abandonment of the claim. They waited essentially almost a year and eight months to raise it. What evidence is there that they were aware in the interim? Oh, it's in the record. But Mr. Stinson, on examination on events, admitted he received the judgment in December of 1996. He admitted in interrogatories and in cross-examination, he admitted in his that that's, in fact, the case. So he was aware of the judgment. That's undisputed. And the foreclosure efforts? The foreclosure efforts didn't take place until after the fourth bankruptcy was dismissed. Was there ever any finding of bad faith in those bankruptcy filings? I think if you look at the filings, one is that the August question is yes. Was there a finding of bad faith by the court with respect to the bankruptcy filings, the sequential bankruptcy filings? The district judge in Judge Newsom did find that we have serial filings here. He also questioned the veracity of the schedules. Did he make a specific finding? Did Judge Dellin in the prior bankruptcy say no, that there was a bad faith filing? No, there's no specific. There's no bad faith filing. And wasn't there also an argument? And, again, I'm not saying one is credited more than the other, but wasn't there also an argument that there were defenses? No, Your Honor. Were they discounted by byright? There were no defenses, Your Honor. The only defense that they really raised was that the debt was discharged in the Chapter 7 proceeding that took place in 1994. The court clearly found no, it wasn't discharged. In appellate papers, counsel here said that the defense is that there was no consideration for the guarantee. Because, remember, this was a guarantee of a judgment. As a matter of law, there doesn't have to be consideration for a guarantee. Second, in the stipulated facts, the reason why Mr. Stinson guaranteed the corporate debt was to prevent the forbearance on that. So there are no defenses to the debt as a matter of law on it. And I think the trial court also found that. So debt is still out there. The debt is still good. The money is still owed. And that what we have here is we have a 13-day delay between the trial and the actual dismissal. There's no question that the judgment would have been able to have been obtained three months later. And that's the whole point why this, the alleged state violation caused no economic injury on that. So I think you have to, in balance of the equities, I still find that the abuse of discretion issue is, one, the idea that you, that it's unreasonable to rely upon the representations of the debtor. Second, that the court really didn't consider the delay caused by the debtor in this case. And those are the only two factors mitigating against annulling the state because there's no other prejudice. No other creditor was prejudiced. The debtor wasn't prejudiced. He knew the trial was going forward. His lawyer told him the trial was going forward on that. So he didn't stay away because of this. In terms of the bad faith, we have a filing here 45 days after a case was dismissed. That in and of itself is in the bad faith. And we have the serial filings here. We have three filings of 13s that were dismissed. Dawson wasn't extant at the time. The BAP rule, correct? Correct, Your Honor. Should we decide, apply Dawson here and decide the case or should we go back? I think there are two issues with regard to Dawson. That's the emotional distress. The bankruptcy judge, actually his decision is consistent with Dawson. The trial judge just knew something. He heard evidence of the emotional distress. And he awarded emotional distress even though there was no economic injury. The BAP was sending it back to see if there was economic injury. Under Dawson now, there's no need for that. And under the Dawson standard, it's within the discretion of the bankruptcy judge. The only thing that the judge in Dawson, the only issue with Dawson that's open, is the nexus between the stay violation and the emotional distress because what Mr. Stinson argued or said, his distress was caused by the fact that he believed the debt was discharged. When he saw the foreclosure on his house, his distress was he thought the debt was discharged. Not that there was a stay violation, but he thought that the debt was discharged. Well, that's an erroneous belief. The debt was not discharged. So he has not established the nexus between the emotional distress and the stay violation. Doesn't it collapse into the same thing? It may, Your Honor. What he's basically saying is I had no idea they could come take my house. Whether you call it a violation of a stay or a discharge, the effect is the same, right? But this took place after he filed his fourth bankruptcy petition, raised the issue to invalidate the judgment, and then abandoned that claim. So he knew the judgment was there. Would you speak briefly to the fee issue? The fee issue, Your Honor, I think Dawson resolves it. There's no need to remand it. And you have to look at the fees here. You've got to remember why this case was so extensive. They raised this claim that the matter was discharged in 1994. Essentially, they were saying that Mr. Stinson, in 1994, filed a fraudulent bankruptcy for his corporation. The creditor ---- You're running out of time. Okay. To cut to the chase, what I would like to have you do, do you want to wait for the question? Sure. Or do you just want to go ahead? The point that I'm interested in figuring out is what was the obligation of the trial judge on the fees when counsel says it's really more like damages, it's not an ordinary fee petition. Well, I ---- It should have been handled. Okay. Counsel just said they should do it as a fee application. She said it right here. She said we could go back and do it as a fee application. That's what the court did. You submitted ---- First of all, counsel was wrong. She never submitted a declaration. There was no declaration. The only declaration you will find in that file is my declaration. There was never a declaration. The judge asked her for a declaration the second time around. He gave her two bites of the apple, and she still didn't do it. There is no declaration in this file, in this record. So the fee application is more than ample. All the judge wanted to know is because we had claims that were clearly distinct. For example, you had the discharge claim. Clearly, it had nothing to do with the stay. He asked her to take that out. She also sought damages for a business that didn't exist. She also sought damages for a loan. That took up a huge amount of time in this case. She lost on those issues. The issue with the stay was all stipulated facts. There was any dispute on to the facts of the stay violation. That could have been done in a day. It should have been done back in the first chapter, the chapter 13. But there's no dispute that what Mr. Smith said to Mr. Cook, there's no dispute as any facts. The litigation all involved the discharge allegation and the fabricated damage claims. Again, remember, the judge found no damages. If you're down to half a minute, you can either use it or reserve it. Your Honor, if you have a minute, I'll quickly say, with regard to the punitive damages, counsel is misciting the record. The Court applied the proper standard. Second, it is not an abuse of discretion. Bankruptcy Code says the judge under certain circumstances may award punitive damages. It doesn't say even if it finds the circumstances, it has to. There's no requirement at all to apply punitive damages. Second, the judge went through the circumstances, and he said under the circumstances of this case, he does not find the conduct to be egregious to the level of award of punitive damages. Your Honor, that requires no remand at all. Thank you for your argument. Rebuttal. Basically, what the creditor's arguing is that they failed to tell us that there's a stay in place, and if we had known about it, we wouldn't have done what we did. No. No, he's not saying you failed to say there's a stay in place. He's saying that your client's attorney told him affirmatively there was not a stay in place because the bankruptcy petition was being discharged, you were being dismissed. And as a matter of law, that's just legally impossible for a credit – I mean, for an attorney to – I mean, it's established that a good-faith belief that the State does not apply is not a defense to automatic stay. The point I want to make is – Oh, wait, wait, wait. You're saying that they shouldn't be able to take a client's lawyer's word for the fact the case is being dismissed? The case law establishes a good-faith belief that the State does not apply is not a defense to automatic stay. It may go to willfulness, but it's not a defense. The point I wanted to make is they're claiming that even if they knew, they would have gone forward. But the fact is that they did go forward even after they were told of the automatic stay. And during the trial, Judge Newsom even asked Mr. Cook – because, remember, the liens were still there. This is a case where liens were placed on Mr. Stinson's home. This is not a deed of trust issue. This is a judgment that went to abstracted judgment, went to lien, went to writ of execution, went to a sheriff's sale. And that's when the case started, when the sheriff had posted this house is going to sale, the neighbors are there, the daughter's crying. That's when Mr. Stinson came in. We had to get a TRO. And it wasn't until a TRO was set that they finally agreed to stop with the proceedings. And Mr. Houser says I didn't file a declaration. I'd like to point to my Exhibit 7, Appendix 7, to the appeal. That's my declaration there, sworn declaration. And I set forth exactly all the attempts that were made to stop that sheriff's sale. And it wasn't until I filed a TRO that they finally agreed. And even after that, abstract stayed on for years through the litigation. And I heard him to say that you hadn't filed a declaration with respect to attorney's fees. It's my amended declaration regarding attorney fees. I go through exactly what happened in the case, why costs were incurred, all the defenses, the trouble I had determining whether defenses should be included, and it's a sworn signed declaration. It's number 7. And we think that not only was it proper not to null it, but the punitive damages should have been awarded in this case. And even Judge Newsom, he asked Mr. Cook directly, this is a case where they got an attorney, they got an award of judgment against Mr. Stinson after they received the ‑‑ learned that the dismissal had come in the mail, and they received  And Mr. Cook said, well, I don't know. They realized there's a state violation. They still went back to state court, got an attorney fees judgment. So now they had two judgments, and it wasn't just for attorney fees. It was $21,000. The second one, $21,000 plus attorney fees. They slammed two liens against Mr. Stinson's home, and they left him there throughout litigation. And Judge Newsom asked Mr. Cook, why did you leave both liens on there? You know, the second one, they couldn't be there. Why did you need two liens? Because that's double the amount. And Mr. Cook said, he said, you mean dump one of them? And he said, oh, no, I wouldn't dump that. That gives me priority. This is a game of priority here. It was a game to Mr. Cook. And he was gambling that he would be able to come in, make Mr. Stinson a bad guy and prevail. So we believe that punitive damages should have been awarded here and all attorney fees. Thank you. Roberts. Thank you, counsel. Before we submit the case for decision, counsel, I'm looking at ER 21920 at SEC. This question is addressed to your opposing counsel. You can stay at the podium if you'd like. I'm going to square that with what you told us. It is a declaration, isn't it? And it has her time charges and et cetera. So she did file a declaration. OK.  All right. Case just argued will be submitted for decision. We'll proceed to the next case on the calendar, United States versus Jardim.
judges: Hawkins, McKeown, Clifton